IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SEAN T. W., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 19-CV-645-JFJ |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Sean T. W. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claims for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.    General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an

"acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the

2

decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 28-year-old male, applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on June 23, 2016, alleging a disability onset date of May 27, 2016. R. 14, 198-209. Plaintiff claimed he was unable to work due to conditions including neck injury, back injury, and spinal cord injury. R. 230. Plaintiff's claims for benefits were denied initially on August 16, 2016, and on reconsideration on November 16, 2016. R. 57-112. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on April 24, 2018. R. 29-56. The ALJ issued a decision on September 20, 2018, denying benefits and finding Plaintiff not disabled because he could perform other work existing in the national economy. R. 14-24. The Appeals Council denied review, and Plaintiff appealed. R. 2-5; ECF No. 2.

The ALJ found that Plaintiff's date last insured was December 31, 2021. R. 16. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 27, 2016. *Id.* At step two, the ALJ found that Plaintiff had the following severe

impairments: cervical degenerative disc disease status-post fusion; lumbar degenerative disc disease; and chronic pain syndrome. R. 17. He found Plaintiff's medically determinable mental impairment of depression to be nonsevere. *Id.* In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had no limitation in all four areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. R. 17-18. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 18.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), "except occasionally stoop, kneel, crouch and climb stairs but no crawling and climbing ladders and should avoid cold temperatures, heights, and moving machinery." *Id.* At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 22. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled light exertion work, such as Usher, Ticket Taker, and Cashier. R. 23. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). *Id.* Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

## III. Issues

Plaintiff raises three points of error in his challenge to the denial of benefits: (1) the ALJ's RFC was not supported by substantial evidence, because he improperly failed to evaluate the opinions of treating physician Jarom Daszko, M.D. and Physician Assistant ("PA") Philip Ford;

4

(2) the ALJ's consistency findings are not supported by substantial evidence; and (3) the ALJ failed to follow VE testimony that was favorable to Plaintiff. ECF No. 13.

IV. Analysis

    A. ALJ Was Not Required to Weigh Dr. Daszko's Letter or PA Ford's Opinions

Plaintiff argues the ALJ failed to evaluate opinions from treating physician Dr. Daszko and PA Ford. *See* R. 426. "Medical opinions" are "[s]tatements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). When a medical opinion comes from a treating source, the ALJ must give it controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the ALJ finds the opinion is deficient in either respect, then the ALJ must consider several factors in determining the weight to be given to the medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).[1] If, after considering the relevant factors, the ALJ rejects the opinion completely, "he must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (quotations omitted). In all cases, the ALJ must give "good reasons" for the weight assigned to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); *Watkins*, 350 F.3d at 1301.

The ALJ also should consider opinion evidence from "other sources" who do not qualify as "acceptable medical sources," such as PAs. *See Blea v. Barnhart*, 466 F.3d 903, 914-15 (10th

---

[1] Those factors include: (1) the examining relationship; (2) the treatment relationship; (3) the length of the treatment relationship and the frequency of examinations; (4) the nature and extent of the treatment relationship; (5) how well the opinion is supported; (6) its consistency with other evidence; and (7) whether the opinion is from a specialist. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Cir. 2006); Social Security Ruling ("SSR") 06-03p[2]; 20 C.F.R. §§ 404.1502(a)(8) 416.902(a)(8) (stating that, for claims filed before March 27, 2017, PAs are not acceptable medical sources). Opinions from health care providers who are not "acceptable medical sources" should be evaluated using various enumerated factors,[3] and the ALJ should sufficiently explain the weight given to the "other source" evidence. *Id.* SSR 06-03p. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) ("In the case of a nonacceptable medical source . . . the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'") (quoting SSR 06-03p).

On June 1, 2016, Dr. Daszko prepared a letter titled "Excuse for Absenteeism." R. 426. The letter stated, "Please excuse the absence of [Plaintiff] from 06/01/16 through 09/01/16 due to medical illness." *Id.* The letter further stated that the addressee could contact him if there were any questions or concerns. *Id.* On July 5, 2016, a PA from the same clinic, Philip Ford, noted in treatment records during an office visit that "[d]isability was put to June 2017," and "normally I do 3 months at a time." R. 480. On August 10, 2016, PA Ford repeated the same note regarding extension of the disability letter and added, "[n]eed to have note off work 3 more months," and "was to go back 9/1/16" but "[b]ack not improving." R. 514.[4]

---

[2] SSR 06-03p was rescinded effective March 27, 2017, but it still applies to claims that were filed before that date. *See* 82 Fed. Reg. 15263-01, 15263, 2017 WL 1105348 (Mar. 27, 2017).

[3] Those factors include: (1) the length and frequency of the treatment relationship; (2) consistency of the opinion with other evidence; (3) the degree to which the source presents relevant evidence in support of the opinion; (4) how well the source explains the opinion; (5) the specialty or area of expertise of the source; and (5) any other relevant factors that tend to support or refute the opinion. SSR 06-03p. Not every factor will apply in every case, and the evaluation of "other source" evidence depends on the particular facts of each case. *Id.*

[4] Plaintiff erroneously states in the opening brief that the July 2016 note was also authored by Dr. Daszko, rather than PA Ford. *See* ECF No. 13 at 5. He corrects the error in the reply brief but contends that PA Ford was an "extension" of Dr. Daszko, arguing that "the actions of Ford are also the actions of Dr. Daszko." ECF No. 16 at 3. The Court rejects this argument as contrary to the pertinent regulations, which consider treating physician opinions to be separate from opinions given by non-acceptable medical sources such as PAs. *See* 20 C.F.R. §§ 404.1527(a), 416.927(a); Social Security Ruling ("SSR") 06-03p. The regulations do not contemplate whether a PA is an "extension" of a supervising physician.

Plaintiff argues the ALJ's RFC is unsupported by substantial evidence, because he failed to account for or weigh Dr. Daszko and PA Ford's opinions. Plaintiff contends that the severity and longevity of his condition is supported by objective records. *See, e.g.*, R. 607 (March 2018 physical therapy records noting observations of tenderness to palpation along lumbar paraspinal muscles, pain and limitation with supine-sit and sit-stand, painful and slow ambulation, limited and painful side-bending, and positive straight-leg raise test with positive prone backward bending test for L3-4). Plaintiff argues the ALJ was required to explain his reasons for failing to follow Dr. Daszko's opinions.

Plaintiff's arguments fail. First, Dr. Daszko's June 2016 letter is not an opinion regarding the severity of Plaintiff's medical conditions or his ability to work. Rather, it is only a letter excusing Plaintiff from absenteeism for a period "due to medical illness." R. 426. The letter does not state what Plaintiff's "medical illness" is, or even whether Plaintiff was capable of working during that period. The letter provides no limitations regarding his ability to work under any conditions. As a result, the letter is not a true medical opinion that the ALJ was required to weigh, and the letter is so vague that it is not significantly probative of Plaintiff's condition, such that the ALJ was required to address it or expressly reject it. *See Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (physician's statement providing no information about the nature and severity of claimant's physical limitations or activities he could still perform was not a true medical opinion); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects") (citation omitted); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.").

Even if it could qualify as an "opinion," Dr. Daszko's letter is merely a statement that Plaintiff was unable to work for a period of time, which is an opinion reserved solely to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1)-(3), 416.927(d)(1)-(3) (explaining that opinion that claimant is disabled is not a medical opinion but is opinion on issue reserved to Commissioner, because it is a case-dispositive administrative finding); *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (treating physician's opinion on issue reserved to Commissioner is not binding on Commissioner in making his ultimate determination of disability). Plaintiff's argument that the ALJ was required to explain his reasons for rejecting such a vague opinion is unsupported and unconvincing. Moreover, reconsideration agency reviewer S. Hanna, M.D., noted Dr. Dazsko's letter (R. 85) and still found Plaintiff could perform light work with some postural and environmental limitations (R. 90-91). The ALJ gave Dr. Hanna's opinions "great weight" (R. 22), and Plaintiff does not dispute this conclusion. The Court further rejects Plaintiff's attempt to link his objective March 2018 physical therapy treatment notes with Dr. Daszko's June 2016 letter, as the two records appear completely unrelated, and it would be entirely speculative to link Dr. Daszko's letter to the 2018 back-related objective findings.

Second, with respect to PA Ford's treatment note that "[d]isability was put to June 2017," and "normally I do 3 months at a time," (R. 480), this note is equally vague and unsupported by any explanations or functional opinions that would require express weighing. The ALJ did note this particular office visit, and while the ALJ did not note PA Ford's disability notation, he did note that Plaintiff reported seeing his primary care physician for chronic back and neck pain, and the physical exam was within normal limits. R. 20 (citing R. 480-481). The August 2016 notation that Plaintiff's back was "not improving" (R. 514) is also vague and does not explain how it limited Plaintiff's ability to work.

8

Here, the ALJ did not need to weigh PA Ford's vague opinion statements. At best, those statements were limited to opinions that Plaintiff is unable to work. R. 480. As with Dr. Daszko's letter, PA Ford's opinion amounted to an opinion reserved solely to the Commissioner – whether Plaintiff is disabled. *See* 20 C.F.R. §§ 404.1527(d)(1)-(3), 416.927(d)(1)-(3) (explaining that opinion that claimant is disabled is not a medical opinion but are opinions on issues reserved to Commissioner because they are case-dispositive administrative findings); *Castellano*, 26 F.3d at 1029 (treating physician's opinion on issue reserved to Commissioner is not binding on Commissioner in making his ultimate determination of disability). His statements that "[d]isability was put to June 2017" and "[b]ack not improving" say nothing about the severity of Plaintiff's conditions or his functional limitations. Accordingly, there was nothing for the ALJ to weigh. Moreover, reconsideration agency reviewer Dr. Hanna noted PA Ford's July and August 2016 disability notations (R. 86) and still found Plaintiff could perform light work with some postural and environmental limitations (R. 90-91). The ALJ gave Dr. Hanna's opinions "great weight" (R. 22), and Plaintiff does not dispute this conclusion.[5]

**B.    ALJ's Consistency Analysis Was Supported by Substantial Evidence**

Plaintiff argues the ALJ's consistency analysis was "directly contrary to law." ECF No. 13 at 8. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7. If they are consistent, then the ALJ "will determine that the individual's symptoms are more

---

[5] Plaintiff additionally argues in this section that Plaintiff "does not agree" with the ALJ's notation in the decision that Plaintiff's medical findings were within normal limits. ECF No. 13 at 7. He contends it is "not normal for a 33 year old man to have the severe orthopedic and neurological impairments that the Plaintiff does." *Id.* Plaintiff does not cite any records or develop this argument in any coherent manner, and the undesigned finds this vague argument is waived. *See Femedeer v. Haun*, 227 F.3d 1244, 1255 (10th Cir. 2000) ("Perfunctory complaints that fail to frame and develop an issue are not sufficient to invoke appellate review.") (cleaned up).

likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 416.929(c)(3).[6]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 19. In particular, the ALJ noted that Plaintiff's symptoms were inconsistent with treatment notes discussed in the decision that show his condition

---

[6] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

10

was well controlled. R. 19-20. In support, the ALJ reviewed Plaintiff's medical records, which repeatedly revealed normal or largely normal examination findings. *Id.* The ALJ further noted that Plaintiff's allegations of back and leg pain, disc deterioration, falling and leg weakness, and sleepiness resulting from medication were "partially supported" by his use of prescription medications with some findings of cervical diminished range of motion, lumbar limited range of motion with some tenderness, diminished left toe dorsiflexion strength, and slightly diminished left ankle dorsiflexion strength on June 1, 2016. R. 21 (citing R. 430, 433). The ALJ noted that Plaintiff requested a cane for ambulation in July 2016, and the treating source ordered a cane for him. *Id.* (citing R. 491-492). Nonetheless, the ALJ noted that the remaining of Plaintiff's physical examinations were within normal limits and showed no neurological defects. *Id.* (citing R. 363, 406-407, 480-481, 489-492, 494-495, 514-516, 519, 528-529, 532-533, 536-537, 562, 582-583).

The ALJ further noted that Plaintiff apparently did not receive any cervical or lumbar treatment in 2017. *Id.* Although Plaintiff reported in April 2018 that he was going to see a surgeon for his back in June 2018, there were no medical records documenting that Plaintiff needed lumbar surgery. *Id.* (citing R. 602, 616). The ALJ noted there were no medical records from a treating orthopedist, neurologist, chiropractic care, hospitalizations, or ongoing surgeries, although he noted that Plaintiff received physical therapy and steroid injections in 2018. *Id.* In May 2018, a discogram showed no evidence of posterior annular tear at L3-4. *Id.* (citing R. 621). The ALJ further noted that Plaintiff's mental health allegations were unsupported in the record. R. 21-22.

Finally, he gave "little weight" to Plaintiff's Exertion Questionnaires (R. 238-240, 268-270). R. 22. He found Plaintiff's statements in the Exertion Questionnaires were not consistent with the treatment notes discussed in the decision. *Id.* He further found Plaintiff's statements in the Exertion Questionnaires were inconsistent with the opinions of agency reviewers H. Pham, M.D., and Dr. Hanna, who opined in 2016 that Plaintiff was capable of performing light work with

11

some postural and environmental limitations. *Id.* The ALJ "great weight" to those agency opinions, as they were consistent with the treatment notes showing Plaintiff's impairments were well controlled. R. 22 (citing R. 75-76, 104-105).

Plaintiff alleges the ALJ erred in this analysis, by failing to link the evidence cited in the decision to his consistency findings and "further weigh the evidence in his consistency findings." ECF No. 13 at 10. Plaintiff further alleges the ALJ failed to articulate the various factors cited in SSR 16-3 and failed to weigh or discuss the evidence regarding Plaintiff's daily activities. Plaintiff does not specifically dispute any of the ALJ's consistency findings or cite to any records supporting his allegations supporting the intensity, persistence, and limiting effects of his symptoms.

The Court finds that the ALJ's consistency analysis was proper. Regarding his daily activities, Plaintiff complains that the ALJ failed to discuss and weigh his daily activities. However, the ALJ did weigh Plaintiff's two Exertion Questionnaires, which described his daily activities in detail, giving them "little weight" as inconsistent with treatment notes and the agency reviewers' opinions. R. 22. Elsewhere in the decision, the ALJ summarized Plaintiff's reports from his two Exertion Questionnaires dated July and October 2016. R. 19 (citing R. 238-240, 268-270). Plaintiff fails to point to any specific error in the ALJ's evaluation of the Exertion Questionnaires, and the Court identifies no error.

As for Plaintiff's allegation that the ALJ failed to link the medical evidence to his consistency findings, the Court rejects this argument. As explained above, the ALJ went through the medical record and specifically addressed the consistency of Plaintiff's allegations compared with the medical record showing examination results that were generally within normal limits. R. 19-22. *See Megginson v. Astrue*, 489 F. App'x 260, 263 (10th Cir. 2012) (routinely normal clinical examination findings undermined claimant's allegations). Again, Plaintiff points to no specific

records that the ALJ failed to consider that would support his allegations of disabling pain or limitations.

The Court notes that some records did show less favorable findings related to his spine, and the ALJ did not summarize all of these findings. *See, e.g.*, R. 507-508 (June 2016 MRI revealed degenerative disc disease at C3-4 and slight bulging disc at C3-4 that touched cervical spinal cord but did not displace or compress spinal cord); R. 499 (June 2016 MRI revealed congenital fusion of L4-5 and neural foraminal narrowing on right at L4-5, degenerative disc disease at L5-S1, and combined congenital and degenerative right neural foraminal stenosis at L5-S1 with trapped right L5 nerve that could correlate with right L5 radiculopathy); R. 607 (positive straight leg testing in March 2018 physical therapy session). However, the ALJ noted Plaintiff's imaging and treatment history (R. 21), and he found that the vast majority of objective findings related to his spine were within normal limits and tended to contradict Plaintiff's testimony of disabling pain. *See id.* Plaintiff does not persuasively demonstrate that the ALJ's conclusions were legally flawed.

As for Plaintiff's argument that the ALJ failed to address each of the factors outlined in SSR 16-3p, such a "formalistic factor-by-factor recitation of the evidence" is not required. *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). Here, the ALJ set forth the specific evidence he relied on in evaluating the consistency of Plaintiff's subjective complaints with other evidence, which satisfied the ALJ's duty in this regard. Again, Plaintiff points to no part of the record to contradict or challenge the ALJ's consistency findings, and the Court will not develop an argument on Plaintiff's behalf. The Court finds the ALJ's consistency discussion satisfies SSR 16-3p.

C. **ALJ's Step Five Analysis Was Proper**

Plaintiff argues the ALJ's step-five analysis was flawed, because he failed to mention an alternative hypothetical question posed to the VE by Plaintiff's attorney during the hearing. The

13

hypothetical matched Plaintiff's RFC but included a requirement that the individual be required to take additional one- to two-hour breaks during the workday. R. 54. In response to that hypothetical, the VE testified that no work would be available for such an individual. *Id.* Plaintiff contends the ALJ committed reversible error by failing to follow, or to give reasons for rejecting, the limitations contained in Plaintiff's counsel's hypothetical. Plaintiff points out that the hypothetical was consistent with Plaintiff's testimony that he falls asleep for 30 minutes to an hour several times a day due to medications. *See* R. 42.

Plaintiff's argument fails. As explained above in Part IV.B, the ALJ appropriately considered Plaintiff's allegations and found them to be not entirely consistent with the medical evidence and other evidence in the record. Plaintiff identifies no objective records supporting his argument that he should have had an RFC that included falling asleep periodically throughout the day due to medications. As a result, the ALJ was not required to address counsel's hypothetical in the decision or eliminate any of the step-five jobs from consideration based on this alleged limitation. *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (finding that a hypothetical question to VE must contain "only . . . those impairments borne out by the evidentiary record").

The Court further rejects Plaintiff's argument that the ALJ was required to explain why he rejected the VE's testimony regarding a need for additional breaks. *See Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) (finding no step-five error where ALJ's hypothetical included all limitations he properly determined claimant to have). Despite Plaintiff's insistence to the contrary, the Court finds the ALJ's step-five findings were more than mere summary conclusions, as the ALJ adequately explained the basis for the RFC. As explained above in Parts IV.A and IV.B, the RFC was supported by substantial evidence and legally sound. *Cf. Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (remanding where ALJ's step-three findings consisted of a "bare conclusion" that was "beyond meaningful judicial review").

V.  Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 25th day of March, 2021.

                                                              *[signature]*
                                                              **JODI F. JAYNE, MAGISTRATE JUDGE**
                                                              **UNITED STATES DISTRICT COURT**